## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KEITH KIRK**                                                          **CIVIL ACTION**

**VERSUS**                                                             **NO.  15-4886**

**LOUISIANA STATE PENITENTIARY**                    **SECTION "B"(2)**
**BURL N. CAIN**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Keith Kirk, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On October 29, 2009, Kirk was indicted by a grand jury in Orleans

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 4.

Parish for the second degree murder of Tyrone Anderson.[3]  The Louisiana Fourth Circuit

Court of Appeal summarized the facts determined at trial in relevant part as follows:

> It is undisputed that on . . . August 14, 2009, Mr. Anderson was shot and killed by Mr. Kirk.  The issue at trial was whether Mr. Kirk shot and killed Mr. Anderson in self-defense.
>
> Detective Orlando Matthews, a New Orleans Police Department ("NOPD") Officer, was dispatched to a homicide.  After speaking with Cathy Anderson, one of Mr. Anderson's sisters who lived with Mr. Anderson and their mother at the time, Det. Matthews developed Mr. Kirk and his brother, Kevin Kirk ("Kevin"), as suspects in the murder.
>
> Ms. Anderson testified that she saw Mr. Kirk in their neighborhood for thirty days or more before the murder, but did not know his name.  She stated she heard Mr. Kirk and Mr. Anderson talk before the shooting about a CD player.  Mr. Anderson had obtained possession of a CD player belonging to Kevin.  The Kirk brothers believed Mr. Anderson stole the CD player from Kevin.  However, Ms. Anderson testified she overheard Mr. Anderson say that Kevin had given the CD player to him.  Ms. Anderson also stated that, prior the shooting, she intervened in confrontations between Mr. Kirk and Mr. Anderson regarding the matter.
>
> [. . .]
>
> Ms. Anderson testified at trial she was sitting on the steps of a church on St. Andrew Street on the day of the shooting when she saw the Kirk brothers walking down Simon Bolivar Street toward Josephine Street.  After they disappeared from view she began to walk home and was on S. Liberty Street when she encountered her mother walking in the opposite direction.  She turned around to walk with her mother back down S. Liberty Street toward St. Andrew Street.  Ms. Anderson said at about the time she got to Josephine Street and S. Liberty Street, she heard a gunshot.  She ran home, heard another shot, and saw Kevin standing at the gate.  As she got closer she saw Mr. Kirk and Kevin coming down the steps.  Mr. Kirk put a gun in his pocket, and he and Kevin walked off.  Ms. Anderson went inside to find Mr. Anderson shot and laying on the floor.  She came back out to see Mr. Kirk and Kevin slowly walking off.  She said her brother

---

[3]St. Rec. Vol. 1 of 6, Indictment, 10/29/09; Grand Jury Return, 10/29/09.

died there on the floor.  The NOPD crime lab collected two shell casings from the scene.

State v. Kirk, 98 So.3d 934, 937-38 (La. App. 4th Cir. 2012); State Record Volume 4 of 6, Louisiana Fourth Circuit Court of Appeal Opinion, 2011-KA-1218, pages 2-3, August 8, 2012.

Kirk was tried before a jury on January 24-26, 2011, and found guilty of as charged of second degree murder.[4]  The state trial court sentenced Kirk on February 25, 2011, to life in prison without benefit of parole, probation or suspension of sentence.[5]

On direct appeal to the Louisiana Fifth Circuit, Kirk's appointed counsel asserted two errors:[6] (1) The state trial court erred in failing to excuse six prospective jurors for cause. (2) The State failed to prove that Kirk did not shoot Anderson in self-defense.  The Louisiana Fourth Circuit affirmed the conviction and sentence on August 8, 2012, finding no merit in Kirk's claims.[7]

---

[4]St. Rec. Vol. 1 of 6, Trial Minutes, 1/24/11; Trial Minutes, 1/25/11; Trial Minutes, 1/26/11; Jury Verdict, 1/26/11; St. Rec. Vol. 2 of 6, Trial Transcript (pages 1-101), 1/24/11; Trial Transcript (continued pages 101-240), 1/24/11; St. Rec. Vol. 4 of 6, Trial Transcript (continued pages 296-394), 1/25/11; Trial Transcript (continued pages 394-449), 1/26/11.

[5]St. Rec. Vol. 1 of 6, Sentencing Minutes, 2/25/11.

[6]St. Rec. Vol. 4 of 6, Appeal Brief, 2011-KA-1218, 10/3/11.

[7]Kirk, 98 So.3d at 934; St. Rec. Vol. 4 of 6, 4th Circuit Opinion, 2011-KA-1218, 8/8/12.

The Louisiana Supreme Court denied Kirk's related writ application without stated reasons on February 8, 2013.[8]  His conviction became final ninety (90) days later on May 9, 2013, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

About that same time, on May 8, 2013, Kirk signed and submitted an application for post-conviction relief to the state trial court in which he asserted 19 grounds for relief; including three claims that the indictment was defective, eight grounds of ineffective assistance of trial counsel, one ground of ineffective assistance of appellate counsel, four claims that the trial court erred in admitting certain evidence at trial and two claims that he was denied a fair and impartial trial because the State relied upon perjured testimony.[9] Kirk also included one claim that the state trial court erred in denying his cause challenges.

In its opinion issued August 20, 2013, the State trial court denied all of the claims as meritless and noted that the challenge for cause issue had been addressed on direct

---

[8]State v. Kirk, 108 So.3d 80 (La. 2003); St. Rec. Vol. 4 of 6, La. S. Ct. Order, 2012-KH-2023, 2/8/13; St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 12-KH-2023, 9/12/12 (postmarked 9/10/012). The State has not provided any proof that Kirk's writ application was not timely presented to prison officials for mailing to the Louisiana Supreme Court.

[9]St. Rec. Vol. 6 of 6, Application for Post-Conviction Relief, 5/31/13 (dated 5/8/13).

appeal.[10]  The state trial court later issued an order denying Kirk's incorporated request for transcript copies.[11]

Kirk timely[12] filed a writ application with the Louisiana Fourth Circuit seeking review of the order denying him post-conviction relief.[13]  The court denied the writ application on November 26, 2013, but only referenced the trial court's September 16, 2013, order denying Kirk's request for a transcript copy.[14]  This was done despite the fact that his writ application clearly addressed the denial of his application for post-conviction relief.  The Louisiana Supreme Court denied Kirk's related writ application without stated reasons on September 12, 2014.[15]

---

[10]St. Rec. Vol. 6 of 6, Trial Court Judgment, 8/20/13.

[11]St. Rec. Vol. 6 of 6, Trial Court Judgment, 9/16/13.

[12]The state trial court granted Kirk 30 days from the filing date of his notice of intent, or until October 16, 2013, to seek review in the circuit court. St. Rec. Vol. 6 of 6, Notice of Intent, 9/16/13 (dated 8/30/13); Trial Court Judgment, 9/16/13. The State's suggestion that the trial court meant in its order that Kirk had 30 days from the mailbox rule filing date is unpersuasive.

[13]St. Rec. Vol. 6 of 6, 4th Cir. Writ Application, 2013-K-1556, 11/19/13 (dated 10/4/13); Notice of Intent, 9/16/13; Trial Court Judgment, 9/16/13.

[14]St. Rec. Vol. 6 of 6, 4th Cir. Order, 2013-K-1556, 11/26/13.

[15]State ex rel. Kirk v. State, 147 So.3d 185 (La. 2014); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2014-KW-0034, 9/12/14; La. S. Ct. Writ Application, 14-KH-34, 1/9/14 (postal meter 1/3/14). The State has provided no proof that Kirk failed timely to submit his writ application to prison officials for mailing to the Louisiana Supreme Court.

Almost one year later, on September 9, 2015, Kirk signed and submitted to the state trial court a motion seeking a new trial.[16]  The state trial court denied the motion on September 28, 2015, finding the arguments repetitive and that the motion was untimely asserted under La. Code Crim. P. art. 853.[17]  The record does not reflect that Kirk sought further review of this ruling in the state appellate courts.

## II.   FEDERAL HABEAS PETITION

On November 2, 2015, after correction of certain deficiencies, the clerk of this court filed Kirk's federal habeas corpus petition in which he asserts the following grounds for relief:[18] (1) The indictment was defective because it was not read in open court and did not contain all elements of the charged crime. (2) He received ineffective assistance of counsel when counsel failed to challenge the indictment. (3) Counsel failed to cross-examine Dr. Huber, whose testimony did not match the paperwork concerning how the victim died. (4) Counsel failed to object to hearsay testimony from Detective Orlando Matthews. (5) The trial court erroneously admitted hearsay evidence in violation of the Confrontation and Due Process Clauses. (6) Counsel failed to call a bullet/firearms expert. (7) Counsel failed to call an expert after reviewing the pretrial discovery. (8) There was a conflict of interest between petitioner and counsel. (9) Counsel failed to

---

[16]St. Rec. Vol. 6 of 6, Motion for New Trial, 9/18/15 (dated 9/9/15).

[17]St. Rec. Vol. 6 of 6, Trial Court Judgment, 9/28/15.  Article 853 requires that a motion for new trial be filed prior to sentencing.

[18]Rec. Doc. No. 4.

introduce the recorded statement of Cathy Anderson. (10) The trial court failed to correct the false testimony of Cathy Anderson. (11) The trial court erred in admitting witness Kevin Kirk's recorded statement. (12) The trial court deprived him of effective assistance of counsel when the court did not replace his counsel. (13) The trial court failed to excuse jurors for cause. (14) Counsel failed to cross-examine State witnesses based on pretrial recorded statements. (15) Appellate counsel failed to argue viable issues on appeal. (16) Prosecutorial misconduct occurred in soliciting the false testimony of Cathy Anderson. (17) Prosecutorial misconduct occurred in conspiring to discourage the State's witnesses from appearing to testify. (18) The trial court denied him the right to access the grand jury proceedings. (19) Counsel conspired to deny him equal protection, confrontation and due process rights at trial.

The State filed a response in opposition to Kirk's petition, asserting that the federal petition was not timely filed.[19]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[20] and

---

[19]Rec. Doc. No. 17.

[20]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).   The AEDPA therefore applies to Kirk's petition, which, for reasons discussed below, is deemed filed in federal court on September 16, 2015.[21]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Kirk's federal petition was not timely filed.  The State's analysis in part is not accurate because it improperly equates the federal prisoner mailbox rule with the postmark date.  However, the State's ultimate conclusion is supported by the record, and Kirk's petition must be dismissed with prejudice because it is not timely filed.

---

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Kirk dated his signature on the memorandum attached to his form petition on September 16, 2015. This is the earliest date appearing in the record on which Kirk could have submitted his pleadings to prison officials for mailing to a federal court.

IV.   <u>STATUTE OF LIMITATIONS</u>

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[22]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  Kirk's conviction became final on May 9, 2013, which was ninety (90) days after the Louisiana Supreme Court completed review of his conviction after direct appeal.  Applying Section 2244 literally, Kirk had one year from finality of his conviction, or until May 9, 2014, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the

---

[22]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Kirk has asserted no reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case.  The record does not demonstrate the type of circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent.  See Holland v. Florida, 560 U.S. 631, 651-54 (2010) (equitable tolling would be warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner

diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.

Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision

as a tolling statute.  Duncan, 533 U.S. at 175-178.

    The decisions of the Fifth Circuit and other federal courts have held that because

this statute is a tolling provision, the time during which state court post-conviction

proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed
> state habeas application is pending must be excluded when calculating the
> one[-]year period.  Under the plain language of the statute, any time that
> passed between the time that [petitioner's] conviction became final and the
> time that his state application for habeas corpus was properly filed must be
> counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL

609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F.

Supp.2d 771, 771-72 (D. Md. 1998).

    For a post-conviction application to be considered "properly filed" within the

meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544

U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is]

the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303,

306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir.

1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).   The timeliness

consideration in Louisiana, for purposes of the AEDPA, requires application of a prison

mailbox rule to state pleadings filed by a prisoner.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In Kirk's case, when his conviction became final under federal law on May 9, 2013, he had already signed and submitted his state application for post-conviction relief

to the state trial court.  That pleading remained pending, and tolled the one-year AEDPA statute of limitations through September 12, 2014, when the Louisiana Supreme Court denied relief on his related writ application.

The one-year AEDPA statute of limitations period began to run the next day, September 13, 2014, and did so without interruption for 365 days until Monday, September 14, 2015,[23] when it expired.  Kirk had <u>no</u> properly filed state court application for post-conviction relief or other collateral review pending in any state court.

I recognize that Kirk sought other collateral review when he filed his motion for a new trial in the state trial court on September 9, 2015.  That pleading, however, did not toll the AEDPA statute of limitations period.  The state trial court determined that the motion was <u>not</u> filed timely under state law.  Because Kirk failed to meet the state law requirements for timely filing, this motion is not "properly filed" for AEDPA statutory tolling purposes.  See <u>Pace</u>, 544 U.S. at 417; <u>Nellon v. Cain</u>, No. 10-4430, 2012 WL 1142539, at *5 (E.D. La. Jan. 5, 2012) (motion for new trial was other collateral review but offered no tolling because it was denied as untimely by the state court), <u>report and recommendation adopted</u>, 2012 WL 1089232, at *1 (E.D. La. Mar. 30, 2012).

Kirk's federal petition is deemed filed on September 16, 2015, which was two days after the AEDPA's one-year statute of limitations expired on September 14, 2016.

_____

[23]The one-year ended on Saturday, September 12, 2015. Under both state and federal law, the time period falls to the next business day, Monday, September 14, 2015. <u>See</u> La. Code Crim. P. art. 13; Fed. R. Civ. P. 6(a)(1)(C).

Lookingbill v. Cockrell, 293 F.3d 256, 265 (5th Cir. 2002) (missing the AEDPA limitations deadline by even a few days nevertheless renders a federal petition untimely). Kirk's federal petition was not timely filed and must be dismissed with prejudice for that reason.[24]

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Kirk's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

---

[24]The United States Supreme Court decision in Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309 (2012), is not relevant to the timeliness of this federal petition. In Martinez , the Supreme Court held that a procedural bar imposed by state courts "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" Trevino v. Thaler, __ U.S. __, 133 S. Ct. 1911, 1912 (2013) (quoting Martinez, 132 S. Ct. at 1320).  I first note that, in this case, petitioner's ineffective assistance of counsel claims were addressed on the merits by the state courts and not subject to a procedural bar.  Second, the Martinez and Trevino decisions do not address or provide an excuse for untimely filing of a federal habeas petition. See Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); Smith v. Rogers, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); Falls v. Cain, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation).  Martinez and Trevino also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA. See In re Paredes, 587 F. App'x 805, 813 (5th Cir. Oct. 25, 2014) ("... the Supreme Court has not made either Martinez or Trevino retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); Adams v. Thaler, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  Neither Martinez nor Trevino provide equitable or statutory relief from petitioner's untimely filing under the AEDPA.

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[25]

New Orleans, Louisiana, this ____8th____ day of August, 2016.


_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[25]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.